JAMES H. GILBERT, for use, etc.

*v.*

THOMAS W. SPRAGUE *et al.*

*Opinion filed April 16, 1902—Rehearing denied June 4, 1902.*

1. MORTGAGES—*when affidavit to extend chattel mortgage is filed in time.* Section 4 of the act relating to chattel mortgages, (Laws of 1891, p. 171,) permitting the extension of a chattel mortgage by filing an affidavit "within thirty days next preceding the maturity of said debt," is complied with by the filing of an affidavit the day after the note was due by its terms, where, at that time, the statute allowing days of grace had not been repealed.

· 2. SAME—*when an acknowledgment of chattel mortgage is not invalid.* An acknowledgment of a chattel mortgage, reciting, on its face, that the mortgagor is "a corporation organized under the laws of Illinois, of the town of South Chicago," is not invalid because taken before a justice of the peace in the town of Hyde Park instead of in the town of South Chicago, where the evidence shows that the corporation had its only office and place of business in the town of Hyde Park, where the property was located.

3. SAME—*whether mortgage was executed without authority is a question of fact.* Where the defendant to a suit on a replevin bond sets up

his title to the property under a chattel mortgage from a corporation, the question whether such mortgage was executed without authority is one of fact, which is settled by the judgment of the Appellate Court.

4. PRACTICE—*question of fact cannot be converted into one of law by putting it in a proposition.* A question of fact cannot be converted into a question of law by embodying it in a proposition to be held by the court, under the statute authorizing the presentation of propositions of law to be held by the court where a case is tried without a jury.

5. REPLEVIN—*right of defendant to suit on replevin bond to set up title to property.* The defendant in an action on a replevin bond, if the merits of the case have not been tried in the replevin suit, may, under the statute, plead such fact and set up his title as a defense to the suit on the bond; nor is he precluded from so doing because of an order in a previous chancery suit giving him the right to bring replevin, and providing that all questions of title should be determined in the replevin suit.

*Gilbert* v. *Sprague,* 88 Ill. App. 508, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

This is an action on a replevin bond, begun in the circuit court of Cook county on August 6, 1896, by the plaintiff in error, James H. Gilbert, suing for the use of William A. Harris and Thomas J. McGimsie, against the defendants in error, Thomas W. Sprague and Amasa H. Wilson. Defendants in error, Sprague and Wilson, filed a plea of *non debet;* also plea denying the execution of the bond; also plea denying any damage; and the further plea setting up the taking of a non-suit by the plaintiff in the replevin suit; that no trial was had on the merits; that the merits were undetermined, and that the property described in the writ of replevin was the property of Sprague, and not of Harris or McGimsie. Replications were filed, joining issue on all the pleas.

The suit was tried before the court by agreement without a jury. The trial court found the issues for the de-

fendants, and entered judgment upon the finding. An appeal was prayed to the Appellate Court, and the Appellate Court has affirmed the judgment of the circuit court. The present writ of error is prosecuted from such judgment of affirmance.

MASTERSON & HAFT, for plaintiff in error.

DEFREES, BRACE & RITTER, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The replevin suit, in which the replevin bond sued upon in the present suit was· given, was begun by Sprague against Harris and McGimsie on December. 2, 1893, and, by virtue of the replevin writ issued therein, Sprague obtained possession of the property in question. The replevin bond was signed by the defendant in error, Wilson, as surety. The replevin suit came to trial on July 3, 1896, and Sprague took a non-suit. In this suit upon the replevin bond for the ·value of the property taken, (Sprague having refused to turn it over on a writ of *retorno habendo*), Sprague and his surety, Wilson, have pleaded right of property in Sprague under the statutory provision to that effect. (3 Starr & Curt. Ann. Stat.— 2d ed.—chap. 119, sec. 26, p. 3388). To substantiate his contention under the plea, Sprague relies upon a chattel mortgage, executed and delivered to him by the South Park Club Association, dated October 15, 1892, acknowledged October 22, 1892, and given to secure a note for $1000.00, bearing date October 15, 1892, and due sixty days after date. The trial court was asked by the plaintiff below, the plaintiff in error here, to hold certain propositions of law relating mainly to the validity of the chattel mortgage, and of certain proceedings thereunder, or in connection with the same. The propositions thus submitted by the plaintiff below were refused by

the court; and the points now made grow out of the alleged error committed by the court by its refusal of these propositions.

*First*—The first objection, made by the plaintiff in error, is that the affidavits, filed for the extension of the note secured by the chattel mortgage, were not filed within the time required by the statute.

The mortgage, and the note secured thereby, were dated October 15, 1892, and the note was payable sixty days after date. Section 4 of chapter 95 of the statute in relation to chattel mortgages, being the amendment to the Chattel Mortgage act passed in 1891, provides that a chattel mortgage, if *bona fide*, shall be good and valid from the time it is filed for record until the maturity of the entire debt or obligation, or extension thereof made as specified in the act: "*Provided*, such time shall not exceed two years from the filing of the mortgage, unless within thirty days next preceding the expiration of such two years, or if the said debt or obligation matures within such two years, then within thirty days next preceding the maturity of said debt or obligation the mortgagor and mortgagee, his or their agent or attorney shall file for record in the office of the recorder of deeds of the county where the original mortgage is recorded, also with the justice of the peace, or his successor, upon whose docket the same was entered, an affidavit setting forth particularly the interest, which the mortgagee has by virtue of such mortgage in the property therein mentioned," etc. (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2753). Here, the affidavits for extension were made by Sprague and one Stewart, (the latter being president of the South Park Club Association,) on December 13, 1892, and stated that the mortgage would become due by reason of such extension on June 15, 1893. These affidavits were filed for record in the recorder's office of Cook county on December 15, 1892, and duplicates thereof were filed on the same day with George L. Ford, the justice of the peace who

took the acknowledgment of the mortgage, and made entry of the same upon his docket. It is claimed on the part of the plaintiff in error, that the note matured on December 14, 1892, and that the affidavits, not having been recorded and filed until December 15, 1892, were not filed for record "within thirty days next preceding the maturity" of the debt secured. At the time the note and mortgage in question were executed, the statute of this State gave to the maker of a note three days of grace in which he was entitled to make payment. Subsequently in 1895 an amendment to the act in relation to negotiable instruments was passed, providing that no promissory note shall be entitled to days of grace. (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2813). The note, secured by the mortgage here under consideration, being entitled to days of grace, was not due until December 17, 1892, and, if the note is not to be regarded as having matured until the days of grace expired, then the affidavits were filed for record within thirty days next preceding the maturity of the debt secured by the mortgage. The word "maturity," as used in section 4 above quoted, means the time when the note becomes due and enforceable. The meaning undoubtedly is, that the affidavits must be filed for record within thirty days before the time arrives when the mortgagee becomes entitled to enforce the debt or obligation, or to maintain an action on the note. An action could not be maintained on a negotiable note prior to the act of 1895, above referred to, until the days of grace had expired. Here, the note, secured by the chattel mortgage, did not mature until the end of the days of grace to which it was entitled. (*Arnold* v. *Stock*, 81 Ill. 407; *Richards* v. *Matson*, 51 Ill. App. 530). The words of section 4, above quoted, do not require the affidavit for extension to be filed within thirty days preceding the maturity of the note, but within thirty days preceding the maturity of the "debt," secured by the chattel mortgage. The "debt," for which the note was given, did

not mature until December 17, or at the expiration of the days of grace. For these reasons, we are of the opinion that the affidavits for extension, having been filed within thirty days before the expiration of the days of grace, were filed within the time required by the statute.

*Second*—It is claimed, on the part of the plaintiff in error, that a part of the goods taken under the replevin writ were not covered by the chattel mortgage. This is a question of fact, and is settled by the decision of the Appellate Court. It is not before this court for review, as it is not raised by any of the propositions of law submitted to the trial court. The stipulation of facts, made in the present case, recites "that the South Park Club Association executed and delivered to Sprague a chattel mortgage dated October 15, 1892, and acknowledged October 22, 1892, said mortgage covering the goods and chattels replevied by Sprague in the action wherein the replevin bond now sued upon is given." By this clause of the stipulation of facts, it is admitted that the mortgage covered the goods and chattels which were replevied.

*Third*—The next objection made is, that the mortgage was executed without authority. It appears that, on October 25, 1892, at a meeting of the board of directors of the South Park Club Association, a resolution was passed by the board, authorizing the president of the association to execute and deliver the chattel mortgage to Thomas W. Sprague. As the mortgage was dated October 15, 1892, and acknowledged October 22, 1892, it is said that this resolution was passed after the execution of the mortgage, and that, therefore, its execution could not have been authorized by the resolution. The theory of plaintiff in error is, that this resolution did not ratify a mortgage already executed, but authorized the execution of one in the future. If the fact as to the authorizing of the mortgage was before us for our consideration, the evidence shows that the mortgage was not delivered until after the passage of the resolution, and was then

delivered in pursuance of the resolution. The mortgage only became effective from the time of the delivery of it, and this delivery was made after the passage of the resolution.

The question, whether or not the mortgage was executed without authority, was a question of fact, and is settled by the decision of the Appellate Court. It is true that, among the propositions of law submitted to the trial court by the plaintiff in error, and refused by the court, was one which announced that the court should hold that the chattel mortgage in evidence was executed without authority. But the submission of this proposition did not make the question a question of law. A question of fact cannot be converted into a question of law by putting it in the form of a proposition to be acted upon by the court. While the statute authorizes the submission of "written propositions to be held as law in the decision of the case" in trials before the court without a jury, and exception to be taken to the ruling upon such propositions, yet it does not authorize such exception to be taken to the rulings of the court upon questions of fact. In other words, the statute does not provide that propositions of fact should be submitted to the court to be held or refused, but embraces propositions of law only. (*Field* v. *Crawford,* 146 Ill. 136; *First Nat. Bank* v. *Northwestern Nat. Bank,* 152 id. 296; *Order of Foresters* v. *Schweitzer,* 171 id. 325). It follows that the objection, that the execution of the mortgage was without authority, is not well taken.

*Fourth*—It is next contended that the acknowledgment was invalid as having been taken before the wrong justice. The justice, before whom the chattel mortgage was acknowledged, was a justice of the peace of the town of Hyde Park, and it is said that the mortgage should have been acknowledged before a justice of the peace of the town of South Chicago, because the mortgage recites upon its face that the mortgagor, the South Park Club Association, is "a corporation organized under the laws

of Illinois of the town of South Chicago." The recital in the mortgage, that the mortgagor was of the town of South Chicago, did not estop the mortgagee from showing that the mortgagor's residence was in fact in some other town. (*Terhune* v. *Matson*, 40 Ill. App. 296). The testimony shows, that the South Park Club Association had its office and place of business in the town of Hyde Park, and no office or place of business except in that town; and the property in question, at the time of the execution of the mortgage, was located in Hyde Park. The statute requires that the mortgage shall be acknowledged before a justice of the peace of the town or precinct where the mortgagor resides, and we think that, in view of what has been said, this provision of the statute was complied with in the present case, and so far as this mortgagor corporation is concerned.

*Fifth*—The next objection is, that Sprague was precluded from trying his title in this action upon the replevin bond, upon the alleged ground that, under an order of court, he could only try his title in the original replevin suit. The chattel mortgage was extended to June 15, 1893, but it appears that theretofore, on March 25, 1893, a creditor's bill was filed in the circuit court of Cook county by Harris & McGimsie against the South Park Club Association, and that, on March 29, 1893, a receiver was appointed by the court to take possession of the property of the association, and that he did take possession of such property pursuant to the order of the court, including the property here in controversy. The receiver was in possession of the property, when the debt secured by the chattel mortgage, became due in June, 1893. The receiver's interest in the personal property in his possession was sold at public sale and struck off for $25.00 to Harris & McGimsie, but without prejudice to any rights of Sprague; and the receiver was directed to sell and deliver the property to Harris & McGimsie subject to the rights of Sprague. In June, 1893,

Sprague filed an intervening petition in the chancery case, first without leave of court, but afterwards re-filed it with leave of court, which petition recited the execution of the chattel mortgage to Sprague, and the extension of the mortgage, and prayed that an order be entered requiring the receiver to show cause why he should not turn over the property in the chattel mortgage to Sprague, the petitioner. Subsequently, and after the sale of the property by the receiver as above stated, an order was entered directing that the petition of Sprague be dismissed without prejudice to his rights, if any, "to be asserted in some other manner," and further reciting that Harris & McGimsie should not remove the property until Sprague had an opportunity to replevy the same, but should permit it to remain on the premises for at least ten days for that purpose. All parties were, by the order, restrained from interfering with Sprague's right to obtain possession of the property by writ of re-plevin, and it was ordered "that all questions of right and title of said personal property shall remain open and undisposed of, to be settled and determined in said replevin suit," etc.

It is in view of this order entered in the chancery suit that this objection is insisted upon. It is contended by plaintiff in error that by this order Sprague was confined to the replevin suit, as a means of asserting his title, and could not assert it in this action on the replevin bond. The purpose of the order was not to restrict Sprague in the assertion of his rights in the property to the replevin suit, but merely to preserve his right to assert his claim in that manner. The order in the chancery suit left his rights open for determination "in some other manner" than by means of the chancery suit.

Even, however, if this is not a correct construction of the order, section 26 of the Replevin act provides that, "when the merits of the case have not been determined in the trial of the action in which the bond was given,

the defendant in the action upon the replevin bond may plead that fact and his title to the property in dispute, in said action of replevin." (3 Starr & Curt. Ann. Stat. —2d ed.—p. 3388). The action on the replevin bond is merely a continuation of the replevin proceeding. The statute gives the party the right to set up his title, either in the replevin proceeding, or in an action on the bond, where the merits have not been tried in the original case. (*O'Donnell* v. *Colby*, 153 Ill. 324). Here, the merits were not tried in the replevin suit, as a non-suit was taken. The chancery court had no power to deprive Sprague of the use of any legal process, to which he was otherwise entitled to resort; and the order was broad enough to give him the right to assert his title in an action on the replevin bond for the purpose, at any rate, of reducing the damages. (*Stevison* v. *Earnest*, 80 Ill. 513). It follows that the objection now under consideration is without force.

*Sixth*—Further complaint is made by the plaintiff in error that the equitable plaintiffs were entitled to recover attorneys' fees incurred in the original replevin suit. The stipulation of facts, upon which the case was tried, provides that, "if the plaintiff in this case is entitled to recover an attorney's fee for defending the replevin suit, in which the bond sued on was given, $50.00 is a reasonable fee therefor." We are inclined to think that plaintiff in error was entitled to a judgment for nominal damages, and for his costs, and attorney's fees to the amount fixed by the stipulation. (*Schweer* v. *Schwabacher*, 17 Ill. App. 78; *Harts* v. *Wendell*, 26 id. 274; *Dalby* v. *Campbell*, id. 502; *Horner* v. *Boyden*, 27 id. 573; *Siegel* v. *Hanchett*, 33 id. 634; 2 Sutherland on Damages,—2d ed.—sec. 505).

Accordingly, the judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court, with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded.*