RICHARD WOLF

v.

JAMES H. HUNTER.

1.  CHATTEL MORTGAGE—ATTEMPT TO DEFRAUD CREDITORS.—This was replevin by the mortgagee of chattels taken under an *alias fi. fa.* There was no question but that the mortgage was prior in point of time, and regularly filed; but it was claimed to have been given in fraud of creditors. *Held*, that the fact that a portion of the property had been levied upon under the original *fi. fa.*, and recovered by appellant under a replevin writ, and afterwards put in possession of the wife of the mortgagor, with privilege to the mortgagor to use as before, was not sufficient proof that it was made in fraud of creditors.

2.  EVIDENCE—PROOF OF LEVY.—Proof of a levy made August 9, under a writ issued the April preceding, is not admissible, it being a levy made under a dead writ.

3.  NOTICE—PURCHASE IN GOOD FAITH.—Even if proof of levy under a writ *functus officio* may be considered as giving appellant notice before he took his mortgage, it is fair to presume that he knew the writ was void, and there being no existing lien upon the property, he might in good faith take a mortgage to secure his debt, though he may have known the mortgagor was a debtor by judgment.

APPEAL from the Circuit Court of Livingston county. The Hon. N. J. PILLSBURY, Judge, presiding. Opinion filed January 19, 1882.

Mr. M. T. MALONEY and Mr. J. B. RICE, for appellant; cited Pike v. Colvin, 67 Ill. 227.

Messrs. WALLACE & TERRY, for appellee; cited Lewis v. D'Arcy, 71 Ill. 648.

PLEASANTS, J.   This was replevin in the detinet, brought by appellant on the 21st of January, 1879, as mortgagee of James Breen, to recover certain live stock and farming implements which appellee, as sheriff, held under execution against said mortgagor. A jury having been waived, the cause was tried by the court, which found the property to be in the execution debtor; overruled a motion for a new trial, and entered judgment for the defendant for his costs, and for a writ of *retorno*,

Wolf v. Hunter.

from which judgment the plaintiff appealed.    As appears from the bill of exceptions, the facts of the case are few and undisputed.

Plaintiff's mortgage was dated Oct. 15, 1878, properly acknowledged and entered in the justice's docket on the same day, duly filed for record on the next, and given to secure a note of even date for $795, payable on or before the first day of September, 1880, with interest at ten per cent. per annum. It provided that the mortgagor should retain possession until the maturity of the note, unless in the meantime the mortgagee should deem himself insecure, in which case he was authorized to take it sooner, but was peculiar, in that it did not authorize him to sell until default made in the payment of the note according to its tenor.    Both of these instruments were introduced in evidence, and the identity of the chattels mortgaged, levied on and replevied, was admitted, as well as a proper demand therefor refused before suit brought.    The mortgage was senior by three months to the writ under which defendant held the property, which was an alias *fi. fa.* upon a judgment for $341.50 and costs, in favor of Isaiah Straun, against said James Breen and one Henry A. Shuler, from the circuit court of La Salle county dated Jan. 15, 1879, and received by him on the 18th.    So that the single question was, whether there was anything to make it, notwithstanding its priority in time, inoperative in law as against said writ.    Defendant did not attempt to impeach its consideration, or to show that it had been paid or released, but claimed only that it was executed for the purpose of hindering, delaying, or defrauding the creditors of the mortgagor, and to establish this claim, was permitted to prove that on the 9th day of August, 1878, more than two months before its execution, his predecessor in office had levied upon a portion of the property now in controversy under the original *fi. fa.*, although it had been issued on the 23rd of April preceding, and was therefore functus; that Breen then turned it out upon the demand of said officer, but requested him not to remove it, and gave him a delivery bond in the usual form; that when said officer afterwards called for it to make sale, only a portion of it could be found; that such

portion was replevied by appellant under this same mortgage and judgment recovered by him in the Circuit Court of Livingston county, that thereupon he put it in possession of the wife of said Breen, and that Breen thereafter, with her consent and that of appellant, used it as before the levy was made.

If proof of the levy under this dead writ was admissible in connection with further proof that appellant had notice of it before he took his mortgage, it would still be a fair presumption that he also knew such levy was void. There being then no existing lien upon the property, he might in good faith purchase it or take a mortgage upon it, even to secure a debt then created, and although he may have known that the mortgagor was a debtor by judgment. We think the law in such a case would presume good faith in the absence of other proof to the contrary. Moreover, the mortgage embraced other property besides that then levied on, and which is here in controversy, in respect to which as against the effect of such levy, the case is still stronger for appellant. But the record furnishes no proof that he had such notice when he took his mortgage. Breen and he and the officers concerned, were all examined as witnesses on the trial, yet neither of them testified to any fact tending to show it. Appellant was a resident of Livingston county, where also was the property, upon the farm there occupied by Breen, and where it remained after the levy as before, while the judgment was rendered in the Circuit Court for the county of La Salle, so that there was no record in the former to charge him with constructive notice. And without notice, actual or constructive, of the judgment execution or levy, they would not tend to show an intent on his part to hinder, delay or defraud the creditor by means of his mortgage. The only other circumstance to be considered is that after replevying the property so levied on in right of this same mortgage, he put it in possession of the wife of the mortgagor, with consent that she might allow him to use it as before. In view of the peculiar provision before noticed, authorizing him to take possession whenever he should deem himself insecure, but not to sell before maturity of the note, and of the fact that no one else had a lien on it to justify a complaint, we do not re-

gard this as of itself sufficient to warrant the finding of the court.

Under this provision he had taken it by an act as open and notorious as any, by which a change of possession could be effected and advertised. He had thereby acquired the absolute legal title as against the mortgagor (Durfee v. Grinnell, 69 Ill. 371), and all others, so far as we know, except the officer, while the judgment established it as against him. If he had retained the possession, as he might, subsequent lien creditors would have had no right to the property, but only to the surplus of the proceeds, if any should remain after payment of the mortgage debt. Pike v. Colvin, 67 Ill. 231. But having thus taken possession, what was he to do with it until the note was matured, which would be after the next farming season? He was not in terms authorized to sell, nor was he bound to keep it personally, whether at his own risk and cost or not, if he could otherwise provide without injury to the rights of the mortgagor or his creditors. Had he entrusted it directly to the mortgagor himself, the act would not have been fraudulent, *per se*, as against them. Cunningham v. Hamilton, 25 Ill. 230; and no stronger objection would lie to the wife as bailee, even with consent that she might permit him to use it. Such an arrangement would be of advantage to him, and no reason is perceived why it should be deemed necessarily injurious to creditors. He would not be presumed to be regardless of his duty, under the law, or of his interest to have it bring a fair price, when the time should come for it; and if occasion should seem to require, the mortgagee could retake it at his pleasure. Such bailment, then, would not of itself, justify the taking under the alias *fi. fa.*, as against the mortgagee.

It appears, indeed, and the fact is urged as a further circumstance tending to show fraud as well as that the mortgage was not recorded as required by the statute, that the record of it differs in some particulars from the original, and shows express authority to the mortgagee to sell upon taking possession, for the cause specified, before maturity of the note. But the statute declares that the other requirements being met, the mortgage shall, " if *bona fide*, be good and valid, from

the time it is filed for record." R. S. Chap. 95, S. 4. Appellant's duty in that behalf, therefore, was fully performed when he so filed it, and he is not responsible for a mistake in recording it. The difference probably grew out of the fact, if the fact was, as we surmise, that the record book contained printed mortgages of the form commonly used in the county, with blanks only for names, dates, amounts and the like, and the assumption on the part of the recorder, that the mortgage of the appellant was of the same form in its printed parts. However that may be, the rights of the appellant are to be determined by his mortgage, and not the record of it, where they differ. On the whole, we are of opinion that the evidence failed to support the finding of the court, and that there should be another trial. The judgment is reversed and the cause remanded.

Reversed and remanded.

PILLSBURY, J., took no part in this decision.