Mr. Justice Sutton
delivered the opinion of the Court.
In the trial court plaintiffs in error were defendants and defendants in error plaintiffs. We shall refer to them as they therein appeared or by name.
By their complaint plaintiffs attacked the validity of an annexation to Denver of certain Arapahoe County land belonging to Kirkland Development Company. The annexation was accomplished by Denver Ordinance No. 49, Series of 1941.
Plaintiffs’ First, Second, Third, Fourth, Fifth and Eighth claims alleged various constitutional and statutory grounds similar to and thereafter determined adversely to them in Board of County Commissioners of Jefferson County, et al., v. City and County of Denver, et al., 150 Colo. 198, 372 P. (2d) 152 (1962). The. trial court so held and, after the hearing, ruled that their sixth claim relating to lack of due diligence, was not sustained by the evidence. Plaintiffs’ seventh claim, however, asserting that the annexation did not comply with the provisions of C.R.S. ’53, 139-11-2 (5) was sustained. Defendants seek review of the judgment by writ of error.
The trial court found from the evidence that the land sought to be annexed had a notch (or excluded pocket) on its east side; that the boundary of the notch was non-contiguous and did not coincide with any existing block lines, or center lines of streets, roads, highways or alleys or with any governmental subdivision lines; that the notch was created by excluding from the annexation lands belonging to the Order of the Eastern Star which maintains a home for the aged thereon and which it did not desire to have annexed; and, that only by the use of surveying instruments and the use of monuments or markers could this portion of the rather extensive boundary be determined. In addition, the evidence disclosed there is 22,220 feet of noncontiguous boundary, of which *232 864 feet (3.89%) is questioned in this proceeding to void the annexation.
The trial court next proceeded to interpret C.R.S. ’53, 139-11-2, which reads in pertinent part:
“Territory shall be eligible for annexation if such territory:
(1) * *
(2) * * *
(3) Is otherwise qualified under this section but is noncontiguous solely because a plotted street or alley, right of way, public or private, or a lake, reservoir, stream or other waterway lies between the municipality and the territory proposed to be annexed;
(4) * * *
(5) Is such that the noncontiguous boundaries thereof coincide with existing block lines, or center lines of established streets, roads, highways, or alleys, or with governmental subdivision lines for purposes of identification whenever this is possible.
“In determining territory eligible for annexation and establishing boundaries of any territory to be annexed, no territory owned by the same owner, whether consisting of one tract or parcel of real estate or two or more contiguous tracts or parcels of real estate, shall be divided into separate parts or parcels without the written consent of the owner thereof.”
It held that the last part of subsection (5) which reads “or with governmental subdivision lines for purposes of identification whenever this is possible” was directory and that the balance of subsection (5) was mandatory.
The court’s interpretation was also that the final “or” disjoined the paragraph and that by so doing the final words merely suggest that it will make for more identifiable boundary lines if the condition exists whereby governmental subdivision lines could be used for purposes of identification and that where practicable they should be used.
Defendants contend on the other hand that the entire *233 subsection (5) is directory and needs to be complied with only whenever it is possible, i.e., reasonable to do so.
Let us examine the statute. It contains five subsections of which subsections (1), (2), and (4) can be said to be mandatory in one way or another. (3) provides that land is not to be disqualified under this section if it is noncontiguous solely because a plotted street or alley, right of way, public or private * * * lies between the annexing municipality and the territory proposed to be annexed. This indicates that the legislature did not feel that it was mandatory to stop at a street or alley but that territory to be annexed could extend beyond such rights of way to the edge of the property petitioned to be annexed.
Before discussing. subsection (5) in detail it should also be pointed out that the general unnumbered paragraph following (5) makes it very clear that “no territory owned by the same owner, * * *, shall be divided into separate parts or parcels without the written consent of the owner thereof.” Thus by implication if such a tract did not end on a street, alley or governmental subdivision line presumably it still could be annexed.
We turn now to subsection (5) relating to identification of noncontiguous boundaries of annexed territory, which ends with the expression “whenever this is possible.” Clearly these words are permissive and admittedly govern at least the words preceding it reading “with governmental subdivision lines for purposes of identification.” Hence the question is: do these permissive words also govern the preceding part of the same sentence?
In Ferris v. Chambers, 51 Colo. 368, 117 Pac. 994 (1911) it was held that a statute must be construed as an entirety and its intention gathered from all its provisions. In accord: Dekelt v. People, 44 Colo. 525, 99 Pac. 330 (1909).
If, as the trial court found, the last “or” disjoined what *234 follows from the first part of the sentence then the entire first part would indeed be mandatory and every parcel of land annexed would have to have its noncontiguous boundaries so identified. In such case there would seem to be no reason for the qualifying language permitting governmental boundary lines to serve as identifying alternatives. Such interpretation would thwart the obvious intention of subsection (5) that non-contiguous boundaries be identified by one of the means enumerated whenever possible.
In Porto Rico Ry., Light & Power Co., v. Mor, 253 U. S. 345, 40 Sup. Ct. 516 (1920), the court was called upon to interpret the following statutory wording, to wit:
“Said District Court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States not domiciled in Porto Rico * * *.”
It appears that Mor, a Spanish subject claimed the court had jurisdiction even though he was domiciled in Porto Rico. He contended the phrase “not domiciled in Porto Rico” applied only to “citizens of a state, territory, or district of the United States” and since he was an alien domiciled in Porto Rico and not an American citizen, this qualifying clause did not affect him. The Supreme Court, speaking through Mr. Justice Brandéis, stated in this regard:
“No reason appears why the clause ‘not domiciled in Porto Rico’ should not be read as applying to the entire phrase ‘citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States.’ When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.* * *.”
Following the above reasoning we conclude that subsection (5) must be considered in the light of its ob *235 jective, and the proper interpretation of the qualifying clause in question is that it applies to the entire sentence. As a result the statute must be read so as not to deny defendants the right to annex the land involved.
The judgment is reversed and the cause remanded with directions to the trial court to dismiss the complaint with prejudice.
Mr. Justice Hall and Mr. Justice Frantz dissent.